3:26-mj-00230

**DISTRICT OF OREGON, ss: AFFIDAVIT OF KYLE BEAM**

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Kyle Beam, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1. I am a Task Force Officer (TFO) for the Federal Bureau of Investigation and have a special deputation to investigate and enforce violations of Title 21 of the United States Code, which includes controlled substances offenses. I am a Detective employed by the Multnomah County Sheriff's Office, assigned as an investigator with the Multnomah County Sheriff's Office (MCSO) Special Investigations Unit (SIU) – Dangerous Drug Team. I am a sworn police officer and have been since August 2019. I have conducted multiple investigations into drug trafficking offenses and weapons offenses. Through this training and experience, I have become familiar with the way drug traffickers operate to carry out their criminal activity.

2. I submit this affidavit in support of a criminal complaint and arrest warrant for **Emanuel Johan Franco-Ramos (DOB: XX/XX/2007)**, for committing the felony offenses of:

- 21 U.S.C. § 841(a)(1) – distribution and possession with intent to distribute a controlled substance;
- 21 U.S.C. § 846 – conspiracy to distribute and possess with intent to distribute a controlled substance; and
- 21 U.S.C. § 843(b) – use of a communication facility to facilitate a felony drug trafficking offense (Hereinafter the "Target Offenses")

As set forth below, there is probable cause to believe, and I do believe, that Franco-Ramos committed the Target Offenses.

**Applicable Law**

3. 21 U.S.C. § 841(a)(1) – distribution and possession with intent to distribute a controlled substance; 21 U.S.C. § 846 – conspiracy to distribute and possess with intent to distribute a controlled substance; and 21 U.S.C. § 843(b) – use of a communication facility to facilitate a felony drug trafficking offense (Hereinafter the "Target Offenses")

**Statement of Probable Cause**

4. On numerous separate occasions during the months of June, July, and August 2026, a confidential reliable informant (hereinafter "CRI") assisted MCSO SIU with conducting numerous controlled drug buys from a broker operating within a Drug Trafficking Organization. During those controlled buys, MCSO SIU established that the broker receives contact from a drug buyer wishing to purchase fentanyl. The broker then contacts (aka "Dispatches") different Hispanic males (aka "Runners) and orders them to deliver the fentanyl to the buyers. MCSO SIU has established through controlled drug buys, physical surveillance, and cellphone data obtained through numerous search warrants that the broker determines the meeting locations, the prices of the fentanyl, and amounts of the fentanyl to be delivered by the Runner's to the buyers.

5. Through investigative avenues like controlled drug buys and physical surveillance of the runners during the previous two months, I've observed three separate individuals (Runner's) utilizing the same vehicle to distribute fentanyl within the District of Oregon. One of the Runner's I observed utilizing the vehicle appeared to be a 16–20-year-old Hispanic male who I now have identified as Emanuel Johan Franco Ramos. Within the last 30 days, I observed Franco Ramos drive to and distribute fentanyl to the CRI in exchange for MCSO/SIU funds. These transactions occurred during two separate controlled buys with the CRI. On August 14,

2026, I applied for and was granted a geolocation search warrant for the cellular phone we learned that Franco Ramos was using during the controlled buys.

6. On August 17, 2026, I began obtaining geolocation data for Franco Ramos' cellular Phone. August 18, 2026, I reviewed the geolocation data for the phone. During that review, I learned that Franco Ramos's phone was within an area that he's previously delivered fentanyl to the CRI. Additional investigators and I began driving around the area attempting to locate Franco Ramos. I located Franco Ramos driving the vehicle he previously delivered drugs to the CRI near that same location. I observed he was actively utilizing his cellphone, just like the previous times I'd observed him delivering fentanyl. Additionally, Franco Ramos was parked in a residential neighborhood MCSO Investigators have previously observed him delivering fentanyl to other drug affected individuals. I and other members of MCSO SIU continued surveilling Franco Ramos around the District of Oregon. While following Franco Ramos and his car, I notified other members of MCSO SIU that he was likely going to a park off N. Lombard St., because that was consistent with his previous travel during fentanyl deliveries.

7. I observed Franco Ramos stop his car near Columbia Park, located at 4503 N. Lombard St., Portland, Oregon. Investigators observed Franco Ramos get out of his car and retrieve something out of the trunk. He then drove to the intersection of N. Winchell St. and N. Chautauqua Blvd, which borders Columbia Park. A short time later, he drove a short distance to the West and parked again. It should be mentioned that during previous controlled drug buys, investigators watched hm drive short distances within residential areas then park again before conducting drug deals. While Franco Ramos was driving on those instances, he appeared to have no sense of direction. Once again, he was driving and parking around residential areas with no sense of direction, which was consistent with his previous behavior observed by Investigators

during controlled drug buys. Additionally, I observed Franco Ramos actively utilizing his cellular phone while parked inside his vehicle, which supported the fact that his broker was likely dispatching drug buyers to his vehicle's location.

8. Based on the information obtained during previous controlled buys, the information

obtained through the use of geolocation data and pen trap devices, I had probable cause to believe Franco Ramos previously possessed with the intent to distribute fentanyl based on the controlled buys described above. Further, that he was actively conspiring to commit controlled substance violations that day and that evidence of those crimes would be located on his person and within his vehicle.

9. On August 18, 2026, at approximately 7:15 PM, MCSO SIU boxed Franco Ramos and his vehicle in near the intersection of N. Winchell St. and N. Dana Ave, Portland, Oregon. I placed him under arrest and located a Honduran ID Card on his person in the name of Emanuel Johan Franco Ramos (DOB: XX/XX/2007) and with his picture. While taking Franco-Ramos into custody during a search incident to arrest, investigators removed approximately 192.6 grams of white rock substance from his pants pockets. The white rock substance was pre-packaged into 23 bindles of plastic wrapping. The substance later field tested presumptive positive for fentanyl – a schedule II drug. Investigators also seized two cellphones and approximately $3,148.00 of US Currency from Franco Ramos' pockets. Below is a photograph of the evidence seized:

///

///

///



10. Franco-Ramos advised me that he didn’t speak English, therefore I used the language line to translate English to Spanish and vice versa with Franco-Ramos. While using the language line. I read Franco-Ramos his *Miranda* Rights, which he verbally confirmed that he understood and was still willing to speak with me. I asked Franco-Ramos how much more fentanyl he stored in his vehicle. Franco-Ramos told me that he was unsure of the exact amount, but there was more fentanyl in the trunk. I asked him questions about the drug deals he admittedly conducts within the District of Oregon. Franco-Ramos confirmed that he doesn't set the prices or meeting locations of the drug deals, but that different individuals organize the details of the drug deals via cellphone. Then, he delivers the fentanyl and collects the payment. Franco-Ramos was later transported to the Multnomah County Detention Center for drug related offenses.

11. Based on the foregoing, I have probable cause to believe, and I do believe, that Emanuel Johan Franco-Ramos committed the Target Offenses and I therefore request that the Court issue a criminal complaint and arrest warrant for committing those offenses.

12. Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Kemp Strickland, and AUSA Strickland advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
Kyle Beam, Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 5:22 pm on August 19, 2026.

Jolie A. Russo
HONORABLE JOLIE A. RUSSO
UNITED STATES MAGISTRATE JUDGE